IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT MCGEE,

        Plaintiff,                            No. CIV S-07-1524 LKK GGH

    vs.

MICHAEL J. ASTRUE,                FINDINGS AND RECOMMENDATIONS
Commissioner of
Social Security,

        Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, the court recommends plaintiff's Motion for Summary Judgment be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and judgment be entered for the Commissioner.

BACKGROUND

        Plaintiff, born June 6, 1962, applied on July 21, 2004 for disability benefits. (Tr. at 52.) Plaintiff alleged he was unable to work since November 25, 2003, due to neuropathy, anxiety, depression, restless leg syndrome, and degenerative disc disease. (Tr. at 92, 17.)

\\\\\

1

In a decision dated July 27, 2006, ALJ Laura Speck Havens determined plaintiff was not disabled. The ALJ made the following findings:[1]

    1.    The claimant filed applications for a period of disability and disability insurance benefits and for supplemental security income payments on July 21, 2004.

    2.    The claimant is 44 years old, is a high school graduate and has past relevant work experience as a construction supervisor and heavy equipment operator.

    3.    The claimant met the special earnings requirements for benefits based on disability under Title II of the Social Security Act at the time of his alleged disability onset and continues to meet those requirements through at least December 31, 2008.

    4.    The claimant has not engaged in substantial gainful activity since his alleged disability onset date.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

5.  The claimant has the following medically determinable impairment: degenerative disc disease and obesity.

6.  The claimant's medically determinable impairment significantly limits his ability to perform basic work activities.

7.  The claimant does not have any impairment or impairments that meet or equal the criteria set forth in any applicable section of the Listing of Impairments found at 20 CFR, Part 404, Subpart P, Appendix 1.

8.  The claimant has the residual functional capacity to perform a full range of work at the medium exertional level.

9.  The claimant is precluded from performing his past relevant work by his medically determinable impairments.

10. Taking into consideration the claimant's age, education, employment experience, and residual functional capacity, the Medical-Vocational Guidelines found at 20 C.F.R., Part 404, Subpart P, Appendix 2 direct a finding of 'not disabled' as indicated by Rule 203.29.

11. Alternatively, the claimant is able to perform the job of small parts assembler, Dictionary of Occupational Titles #706.684-022, of which 97,000 such jobs exist in the State; the job of cashier DOT #211.462-010, of which 85,000 such jobs exists [sic] in the state; and the job of routing clerk, DOT #222.687-022, of which 15,000 such positions exist in the State.

12. The claimant's subjective statements regarding pain and other symptoms have been considered, but to the extent that those statements constitute an allegation that the claimant has been precluded from engaging in all substantial gainful activity by a medically determinable impairment or impairments for a period of time which has lasted or reasonably can be expected to last for 12 continuous months, they are not found credible.

13. The claimant was not disabled within the meaning of the Social Security Act, at any time on or before the date of this decision.

(Tr. at 25-26.)

\\\\\

\\\\\

3

ISSUE PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ and the Appeals Counsel Improperly Rejected the Diagnosis of the Claimant's Treating Physician; B. Whether Plaintiff is Unable to do the Full Range of Medium Work; C. Whether the Vocational Expert's Second Hypothetical Fails to Encompass Plaintiff's Actual Limitations; and D. Whether the ALJ Failed to Properly Credit Plaintiff's Statements Regarding His Pain and Functional Limitations.[2]

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ

---

[2] In a declaration filed on April 11, 2008, plaintiff has attached new evidence in the form of a January 28, 2008 report and residual functional capacity evaluation by Dr. Kerwin. (Dkt. #18.) Because plaintiff has not even raised the issue that this new evidence should be considered in his points and authorities, let alone provided analysis under the following standards, it will not be addressed.
  A federal district court nevertheless should remand a case to the Commissioner to consider material new evidence if good cause exists for its absence from the prior record. 42 U.S.C. § 405(g); Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).
  New evidence is "material," if the court finds a reasonable possibility that considering the evidence would have changed the disability determination. See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984). Unless it is probative of plaintiff's condition at or before the disability hearing, new evidence is not material. See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a medical condition not significantly at issue at time of hearing).
  "Good cause" requires more than "simply . . . obtaining a more favorable report from an expert witness once [a] claim is denied. The claimant must establish good cause for not seeking the expert's opinion prior to the denial. . . ." Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985)). For example, good cause exists if new evidence earlier was unavailable, in the sense that it could not have been obtained earlier. Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir.1988).

is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

    A.  Whether the ALJ Failed to Consider the Opinion of the Treating Physician

Without any supporting argument, plaintiff asserts only that "the ALJ fails to meet with legal burden required to dismiss the treating physicians determinations. Therefore this should be remanded." [Sic]. This passing comment is the sum total of his argument, aside from a boilerplate recitation of cases, and should not normally be considered. Bare contention, unsupported by explanation or authority, may be deemed waived. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue). Nevertheless, despite plaintiff's failure to even identify which doctor's opinion was rejected, because the only physician given minimal weight was Dr. Kerwin, the court will construe plaintiff's claim as based on the ALJ's treatment of this physician's opinion.[3]

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to

---

[3] The ALJ also gave minimal weight to the DDS report; however, that report was obviously not completed by a treating physician. (Tr. at 24, 134.)

[4] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

        In regard to Dr. Kerwin, plaintiff's treating physician, the ALJ first noted his diagnosis of "peripheral neuropathy, low back pain with disc bulge, hypertension, restless leg syndrome and left carpal tunnel syndrome."  Neuropathy references disorders in the nerves.  It's appearance is often associated with diabetes or compressive forces on the nerves.  Because the nerves themselves are involved, the condition can be painful.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

6

www.neurologychannel.com/neuropathy.  As acknowledged by the ALJ, Dr. Kerwin opined on December 16, 2005, that plaintiff would require a break at least ten minutes of every hour.  (Tr. at 23, 193.)  The ALJ determined to give this source minimal weight, however, explaining that it was inconsistent with the remainder of the medical evidence:

> First, I note that none of the specialists that the claimant has been examined by have set forth such limitations.  Second, the limitations are inconsistent with the objective medical evidence, as discussed herein.  Third, the statements were not made in the course of treatment, but were instead prepared at the request of the claimant's attorney.  Fourth, there is no explanation supporting the limitations set forth in these statements, including the opinion that the claimant must rest every hour.  Fifth, the statements are contradicted by Dr. Kerwin's own records and his minimal findings.

(Tr. at 23.)

All of the aforementioned reasons are sufficiently specific and legitimate to reject this physician's opinion, and they are supported by the record.  The other specialists did not recommend such limitations.  In fact, Dr. So, Director of Neurology at Stanford University Medical Center, examined plaintiff on August 18, 2004, and opined that there was no clinical sign of neuropathy and that "the case for neuropathy is questionable."  (Tr. at 149.)  Although Dr. Kerwin was plaintiff's treating doctor, he was only a family practitioner as compared to Dr. So, who was a specialist in the area at issue.  His opinion is therefore deserving of more weight.  The ALJ is encouraged to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).  Dr. So referred to the objective studies showing mild degenerative joint disease with no nerve impingement (MRI)[6] and median neuropathy suggestive of moderate

---

[6] This MRI of the lumber spine, dated January 16, 2004, indicated good alignment, vertebral bodies of normal height, minimal degenerative changes at L3-4, L4-5, normal signal within the vertebral bodies and spinal cord, minimal facet degenerative changes at L1-2 and 2-3, mild facet degenerative changes at L3-4, minimal discogenic disease with minimal disc bulging at L4-5, minimal disc dehydration with minimal broad based disc bulging and mild facet degenerative changes at L5-S1.  There was no impingement.  (Tr. at 166-67.)

carpal tunnel syndrome (EMG).[7]  A physical exam with neurological testing revealed normal neurological responses.  Dr. So recommended evaluation by a pain clinic which would include a pharmacological, behavioral and psychological approach.  He also advised increased exercise and weight loss to improve pain control.  (Tr. at 149.)

        The ALJ also relied on the consultative report of Dr. McIntire, dated March 19, 2006, which provides the following diagnosis: "question mild degenerative osteoarthritis and degenerative disk disease of the lumbar spine." (Id. at 200.)  In other words, he stated that plaintiff subjectively described pain but objectively there were no findings of radiculopathy or myelopathy.  (Id.)  He did not diagnose neuropathy.  This neurologist's exam revealed coordination, station and gait within normal limits.  An assistive device was not used or needed.  Range of motion in the lumbar area was 90 degrees, while extension was 20/25 degrees.  Lateral flexion was 25 degrees. (Id. at 199.)  Straight leg raising and Lasegue's were negative bilaterally.  Exam of the lumbar spine indicated no bony deformity or paraspinal muscle spasms.  There was no guarding while plaintiff was seated.  While there was a slight loss of extension, there was no tenderness on palpation.  Muscle bulk and tone were normal.  Dr. McIntire concluded that plaintiff should not lift or carry more than 25 pounds frequently and 50 pounds occasionally.  (Id. at 200.)  There were no other limitations imposed on sitting, standing, walking, and no postural or manipulative limitations.  (Id. at 200-01.)

        Plaintiff was also examined by Dr. Keltner at UCSF Pain Management Center on February 25, 2005.  He noted mild tenderness in the lower back.  Strength was 5/5 and symmetric in all areas tested.  Cranial nerves II-XII were intact.  Reflexes were 1+ and symmetric in all areas.  Based on bilateral lower extremity neuropathic pain secondary to neuropathy, this anesthesiologist recommended a medication regimen for pain.  (Tr. at 105.)  The ALJ noted plaintiff did not follow this regimen but reported to Dr. Kerwin that he was "ok" with his current

---

[7] Plaintiff's carpal tunnel syndrome is not at issue in this motion.  The ALJ found that it was not a severe impairment, noting that plaintiff had not alleged that it was.  (Tr. at 19.)

8

medication. (Id. at 18.)

As to the ALJ's stated reason that Dr. Kerwin's statement recommending ten minute breaks every hour was not made in the course of treatment, but were instead prepared at the request of the claimant's attorney, it does appear Dr. Kerwin treated plaintiff from November 21, 2002 through at least October 5, 2006; however, there is a gap in the records indicating no visits to this doctor between February 10, 2005 and December 1, 2005, two weeks before Dr. Kerwin's December 16, 2005 letter which was written at the request of plaintiff's attorney.

The court does take issue with the ALJ's rejection of Dr. Kerwin's functional limitations based on the lack of explanation supporting the limitations. Dr. Kerwin specifically supported his statement that claimant must rest for ten minutes every hour: "peripheral neuropathy with pain and weakness, constant low back pain with disc bulge at L3-5, hypertension, restless leg syndrome and left carpal tunnel syndrome." (Tr. at 193.)

Nevertheless, the ALJ's other reasons are fully supported by the record. Dr. Kerwin's stated functional limitations are contradicted by his minimal findings and the remainder of the record, as outlined above. This treating physician's notes are for the most part cursory, and focused on prescribing medications. (Tr. at 142-167.) The only explanatory chart note between November 21, 2002 and February 10, 2005, is actually supportive of the ALJ's decision. It states, "when [plaintiff] has the Oxycontin, he does great, as a matter of fact, he started coaching slam dunk basketball over at Modesto Christian. It's the first thing he's been able to do physically in years." (Id. at 155.) The more recent records submitted for this physician are equally minimal, repetitive of plaintiff's subjective symptoms, and do not add to the analysis. (Id. at 203-14.)

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair V. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

9

1  Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical
2  evidence." Id.

>   Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002).

Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008).

That court finds that substantial evidence supports the ALJ's decision to give minimal weight to Dr. Kerwin's opinion.

B. Whether Plaintiff is Unable to do the Full Range of Medium Work[8]

Plaintiff's complete argument, with no supporting authority, is that although the ALJ found that plaintiff can do the full range of medium work, all doctors other than Dr. McIntyre found that plaintiff can do only light work. Plaintiff does not refer to these other doctors or cite to the record. Defendant has refused to oppose this claim, as well as the following issue regarding the vocational expert's hypothetical, because plaintiff has not properly articulated an argument. As stated earlier in these findings, bare contention, unsupported by explanation or authority, may be deemed waived. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue). Nevertheless, because the court is able to construe an argument from plaintiff's three sentences,

---

[8] The court is puzzled by plaintiff's failure to raise any issues with respect to an obesity analysis. While obesity is no longer a grounds for disability in a listing, it should be analyzed at the various steps of the sequential analysis as it affects other maladies. However, while at the administrative level, the disability finding process is non-adversarial, Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001), such is not the case at the district court level. The undersigned will not raise theories on his own, and will presume that the medical personnel did take obesity into account in determining the residual functional capacity of plaintiff.

it will address this issue.

Medium work is defined as "lifting not more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR §§ 404.1567(c); 416.967(c). Social Security Ruling 83-10 more specifically outlines the prerequisites of medium work, for which the full range requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time."

Dr. McIntyre found that plaintiff could do medium work. The ALJ properly explained that she was placing greater weight on this opinion because it was consistent with the record as a whole, as addressed in the previous section *supra*. (Tr. at 24.)

Dr. Kerwin's opinion in regard to plaintiff's functional capacity was properly rejected, *supra*. The non-examining DDS physician found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Plaintiff could stand and walk for six hours, sit for six hours and push and pull for an unlimited amount of time. (Tr. at 135.) The ALJ gave this report minimal weight because it was inconsistent with substantial evidence and contradicted by Dr. McIntyre who more recently had the opportunity to examine more recent treatment records and physically evaluated plaintiff himself. (Tr. at 24.) Plaintiff does not make any argument that the ALJ improperly rejected this State Agency report. Plaintiff also fails to point out which medical sources found that he could do only light work, and other than those sources discussed here, the court will not guess plaintiff's thoughts.

Nevertheless, as described in the next section, the ALJ found in the alternative that plaintiff could do certain light work, based on the testimony of the vocational expert. Enumerated finding number 11 states that plaintiff can do the jobs of small parts assembler, cashier, and routing clerk, all of which are unskilled light work, based on the vocational consultant's testimony. (Id. at 25-26, 232.) Therefore, plaintiff's argument is without merit.

C.  Whether the Vocational Expert's Second Hypothetical Fails to Encompass Plaintiff's Actual Limitations

Plaintiff's other issue which defendant refuses to address is that the second hypothetical to the expert contained all of plaintiff's limitations as presented by the medical records, including the limitations in plaintiff's upper extremities. The vocational expert testified that based on this hypothetical, there were no jobs in the national economy that plaintiff could do. Although plaintiff has cited no authority or factual support for this argument, the court will address it to the extent possible.

Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir.1997). If a hypothetical does not reflect all the functional limitations, the expert's testimony as to available jobs in the national economy has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). But see Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical which ultimately serves as the basis for the ALJ's determination. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).[9]

Here, the ALJ found that plaintiff could do the full range of medium work and based on the grids, he was not disabled. Even if plaintiff could not do the full range of medium

---

[9] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, supra, 881 F.2d at 756. The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not. Id. at 756-757.

work, the ALJ found in the alternative that based on the residual functional capacity as set forth in his opinion, the vocational expert found that plaintiff could do certain jobs at the light exertional level, including small parts assembler, cashier, and routing clerk, all of which are unskilled. This assessment was based on a hypothetical limiting plaintiff to sitting for six hours, standing for six hours, walking for six hours, occasionally lifting twenty pounds and frequently lifting ten pounds, and occasionally climbing, stooping, crouching and crawling. (Tr. at 231-32.)

The second hypothetical assessed the aforementioned limitations used in the first hypothetical with the following changes: sitting for four hours, standing for four hours, walking for four hours, occasionally and frequently lift only ten pounds, no climbing, balancing, stooping, kneeling, crouching or crawling. Based on these restrictions, the expert thought plaintiff could only do the small parts assembler job, which would be eroded by 50 percent. (Id. at 234.)

Plaintiff's attorney then added restrictions to this second hypothetical: "if they had the additional limitation of reaching, that they were limited to reaching occasionally above the shoulders, and to only frequently from below knees, to waist to knees, waist to chest, chest to shoulder ...." (Id. at 235.) The expert responded that the small parts assembly job would be virtually all eroded. (Id. at 235.)

If the second hypothetical as given by the ALJ is used, plaintiff could do the small parts assembler job in the number of 48,500 jobs in California. No such jobs exist based on the additional reaching limitations as posed by plaintiff's counsel. Plaintiff does not refer to any record support for his position that the second hypothetical should be used. After dissecting the record, the court can only guess that plaintiff thinks the reaching limitation should be required based on Dr. Kerwin's residual functional capacity evaluation. (Tr. at 23, 101.) As Dr. Kerwin was properly rejected by the ALJ *supra*, the reaching limitation was not required to be included in the hypothetical as no other physician imposed this limitation. (Tr. at 137[10], 197.)

---

[10] The ALJ gave the SSA physician's report minimal weight, however, it is consistent with Dr. McIntire's report on the issue of overhead reaching, both having found that plaintiff has

The ALJ was not required to pose hypotheticals to the vocational expert which reflected limitations and functional restrictions she had properly rejected. The ALJ presented to the VE all of the functional limitations she accepted, and those limitations were supported by substantial evidence. Accordingly, the ALJ did not err.

D. <u>Whether the ALJ Failed to Properly Credit Plaintiff's Statements Regarding His Pain and Functional Limitations</u>

Plaintiff asserts that the ALJ failed to credit his statements regarding the nature and extent of his pain and functional limitations.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. <u>Vasquez v. Astrue</u>, 547 F.3d 1101 (9th Cir. 2008); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. <u>Bunnell</u> at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to

\\\\\

---

no limitation in this regard. (Tr. at 24.)

14

follow a prescribed course of treatment; and (3) daily activities.[11] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom." Vasquez, 547 F.3d at 1104, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007, Smolen, 80 F.3d at 1282. Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing, and supported by reference to specific facts in the record. Vasquez, 547 F.3d at 1104-05.

In this case, the ALJ first reviewed plaintiff's testimony regarding his daily activities, medical treatment, and pain. (Tr. at 20-21.) She then outlined why the alleged symptoms were far in excess of the objective findings, and how plaintiff's complaints were inconsistent in regard to the degree of pain and daily activities, specifically that he reported excessive symptoms and limitations to the SSA, but reported more mild symptoms to the treating sources. (Tr. at 21-22.) For example, plaintiff had reported pain like "having an ice pick driven into your legs" and "constant pain" on August 3 and 4, 2004 (Tr. at 66, 76); however, on August 18, 2004, he told Dr. So that his pain was very mild and that he had no joint pain. (Tr. at 148.) Plaintiff also reported to Dr. Kerwin that his medications cut his pain in half and that when he

---

[11] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

15

took Oxycontin he felt great, so great that he started coaching slam dunk basketball. (Tr. at 20, 160, 155.) Furthermore, on January 11, 2005, plaintiff reported to Dr. Kerwin that his pain was "o.k." and that the medications helped, yet one day earlier he made a statement to the Administration that he was in "'too much pain' with no relief." (Id. at 21, 144.)

The ALJ cited the aforementioned records, along with an entirely separate paragraph devoted to citations to the record indicating how well plaintiff's condition was controlled by medication, by plaintiff's own admissions. (Tr. at 22.) See also Tr. at 157 ("pain controlled 'ok' with present dose); Tr. at 148 ("very mild back pain. No joint swelling, no joint pain); Tr. at 113 (pain control good"). A condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).

In contrast, plaintiff's complaints of pain to the Social Security Administration were more severe during the same time periods. For example, in his work history report, plaintiff described his pain as "like having ice picks driven into your legs." (Id. at 76.) In a daily activities questionnaire, plaintiff stated he had constant pain all day even on his medication. (Id. at 66.) In a disability report on appeal, plaintiff stated that he is in pain all day and gets no relief at all. The pain was so bad that it woke him up every night. (Id. at 84.)

The ALJ also pointed to objective studies which do not bear out the level of pain claimed by plaintiff. She described an MRI of the lumber spine, dated January 16, 2004, which indicated good alignment, vertebral bodies of normal height, minimal degenerative changes at L3-4, L4-5, normal signal within the vertebral bodies and spinal cord, minimal facet degenerative changes at L1-2 and 2-3, mild facet degenerative changes at L3-4, minimal discogenic disease with minimal disc bulging at L4-5, minimal disc dehydration with minimal broad based disc bulging and mild facet degenerative changes at L5-S1. There was no impingement. (Tr. at 166-67.) On March 2, 2004, Dr. Kerwin referred to this report in noting plaintiff's ability to coach

slam dunk basketball, and that it was the first physical activity he had been able to do in years. (Tr. at 155.) He stated, "His MRI shows some minimal disc bulging. Nothing pushing on the nerve roots and a couple of areas of very minimal degenerative joint disease in the small facet joints. Nothing of this would explain his polyneuropathy." (Id.)

Additionally, the ALJ discussed plaintiff's daily activities, beginning with the fact that plaintiff has custody of his three children. Although his father, sister and two of the children assist him with chores, he cares for his three year old child, and does minimal household chores himself, including cooking, occasional dishwashing, vacuuming, laundry, grocery shopping, yard work, lawn mowing. He takes care of his own personal needs and can drive for half an hour at a time. (Tr. at 20, 22.) As mentioned above, he has also coached a basketball team. (Id. at 22.) Plaintiff testified that his coaching experience only required him to sit on the bench and switch players. He did not have to show them drills, and the team had no practices. (Id. at 229-30.) Even accepting plaintiff's testimony, the extent of plaintiff's other activities does not change the analysis.

The ALJ noted further inconsistencies in regard to plaintiff's pain symptoms such as the fact that he had similar symptoms well before his alleged onset date, beginning in January, 2002, yet worked during this time period, up until November 25, 2003. (Tr. at 128, 17.) In July 25, 2003, he was prescribed a wheelchair because he complained that his legs gave out; however, he worked in construction for four months after that date. (Tr. at 22.) A DDS case activities report states, "MER does not support alleged functional deficits - unable to find Rx for electric wheelchair in MER." (Id. at 183.) In a daily activities questionnaire dated August 4, 2004, plaintiff stated that although he was prescribed a wheelchair, he tried to "fight back and walk." (Id. at 66.) Nevertheless, on August 18, 2004, two weeks later, Dr. So noted in his exam that plaintiff walked normally, and could walk on toes and heels very well. Tandem gait was normal. (Id. at 149.) Dr. McIntire also noted in his consultative exam of March 19, 2006, that plaintiff's gait was normal, that he could walk on toes and heels, and in tandem, and he did not use an

assistive device and one was not indicated.  (<u>Id.</u> at 199.)

Based on the aforementioned record, the ALJ concluded that plaintiff's complaints of pain when reported to the Administration were in excess of his alleged pain when reported to his treating physicians during the same time periods, leading to the conclusion that plaintiff was embellishing his symptoms.  The ALJ chose to rely on plaintiff's statements to his physicians. (Tr. at 21.)  Based on the foregoing record evidence, substantial evidence supports the ALJ's credibility determination.

CONCLUSION

The court finds the ALJ's assessment to be fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/29/09

/s/ Gregory G. Hollows

U.S. MAGISTRATE JUDGE

GGH/076
McGee1524.fr.wpd